*661 HUMPHREYS, J.
with whom HUFF, C.J., PETTY, ALSTON and CHAFIN, JJ. join, dissenting.
This case presents an issue of first impression in the Commonwealth with respect to the invited error doctrine[14]: assuming error was actually invited, whether or to what extent the invited error doctrine applies when the party misstating the law or inviting or acquiescing in an error of law attempts corrective action in the trial court and no prejudice to other parties has yet resulted from the error? Because the majority opinion omits facts and law pertinent to the legal analysis in this case, and, further, because in my view, the majority’s analysis is seriously flawed and fraught with major adverse consequences for the conduct of future trials, I dissent from the analysis and judgment of the majority in this case.

*662
WHETHER DUFRESNE INVITED ERROR IN THE FIRST INSTANCE

It is undisputed that, during her argument on a motion to strike the evidence, Dufresne conceded that grand larceny was an offense for which she could be convicted.[15] It is also undisputed that, since grand larceny is not a lesser-included offense of robbery, for which she was indicted, Dufresne could not properly be convicted of grand larceny absent an amendment to the indictment. Therefore, as everyone now agrees, the trial court erred in convicting Dufresne of grand larceny, in violation of Code § 18.2-95.
However, I begin my departure from the analysis of my colleagues by noting that their assertion that Dufresne “asked the trial court to convict her of grand larceny” during closing argument is not accurate. Although at the conclusion of all the evidence the trial court stated “we are closing arguments now [sic],” counsel for Dufresne immediately followed that statement by the trial court with her statement, “This is my motion to renew my motion to strike.” Counsel for Dufresne then argued the failure of the Commonwealth’s evidence to establish the element of force, threat or intimidation sufficient to support the charge of robbery and as reflected on page 62, lines 22-23 of the joint appendix and contrary to the assertion of the majority, concluded her argument by stating, “For those reasons, I’d ask for the charge to be dropped down to grand larceny.” Based upon the actual statements made by counsel for Dufresne, I cannot accept the majority’s initial premise that the statements by counsel for Dufresne were anything more than a misstatement of the law in the form of a concession regarding the sufficiency of the Commonwealth’s evidence in the context of a motion to strike the evidence.
*663 Based upon my view stated above regarding the statement actually made by Dufresne’s counsel and the context in which it was made, I also conclude that the trial court was not bound by Dufresne’s concession because a party “cannot concede the law.” Cofield v. Nuckles, 239 Va. 186, 194, 387 S.E.2d 493, 498 (1990). Moreover, the record reflects that, in this case, the trial court’s error can ultimately only be laid at its own feet.
The goal of the adversary system of criminal justice that is utilized throughout the English speaking world is to provide a defendant with a fair trial. However, the courts have long recognized that a fair trial does not mean a perfect trial. See United States v. Hasting, 461 U.S. 499, 508-09, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983) (“there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial”); see also Gilland v. Commonwealth, 184 Va. 223, 235, 35 S.E.2d 130, 135 (1945) (“A perfect trial is one of the things hoped for but as yet an iridescent dream.”). Indeed, the harmless error doctrine evolved in recognition that counsel and judges are human and, thus, fallible, but a judgment will not be disturbed if there was “a fair trial on the merits and substantial justice has been reached.” Shifflett v. Commonwealth, 289 Va. 10, 12, 766 S.E.2d 906, 908 (2015). Furthermore, the entire rationale underpinning both the ap-probate-reprobate bar and the invited error doctrine is fairness to the opposing party and the notion that one’s opponent and the courts are entitled to rely upon a legal position that a party pleads, adopts, agrees to or acquiesces in.
In my view, the analysis of the majority is seriously flawed because it rests upon a foundation underpinned by several erroneous factual and legal premises. First, the majority asserts that “[djuring [Dufresne’s] closing argument,” Dufresne made a “specific and direct request to convict her of grand larceny.” This quote from the majority opinion, is inaccurate as already noted above and ignores the context of the statement made by counsel for Dufresne — a motion to strike the evidence. The sole purpose of a motion to strike the evidence is to assert to the trial court any legal insufficiency in the Commonwealth’s proof of one or more elements of the *664 offense(s) charged. See Rule 3A:15 (“After the Commonwealth has rested its case or at the conclusion of all the evidence, the court on motion of the accused may strike the Commonwealth’s evidence if the evidence is insufficient as a matter of law to sustain a conviction.”). Thus, any statements made by counsel during argument on a motion to strike the evidence must be considered in the framework of the only legitimate purpose of such a motion.
Here, the Commonwealth framed the ultimate legal issue pertinent to this appeal through the indictment it sought and received from a grand jury for the crime of robbery. The Commonwealth never requested, much less received, any amendment of its pleadings; therefore, the only legal issue before the trial court during both of Dufresne’s motions to strike was the sufficiency of the Commonwealth’s evidence supporting Dufresne’s guilt for the crime of robbery or any lesser-included offense of that crime. In the context of the charge the Commonwealth brought against her, Dufresne’s arguments during both of her motions to strike the evidence were properly focused on what evidence the Commonwealth had presented with regard to the elements of the offense charged.
The overarching argument in both of Dufresne’s motions was that the Commonwealth had failed to produce sufficient evidence of the element of force, threat or intimidation to support a conviction for robbery. She never changed her plea or adopted any legal position on her own behalf except that she was not guilty of the crime the Commonwealth elected to charge her with. Here, the record is quite clear. Dufresne argued that the robbery charge should be struck because the Commonwealth’s evidence was insufficient as a matter of law to support a conviction for robbery. Dufresne agreed with the trial court’s suggestion that the Commonwealth’s evidence was sufficient to support a prima facie case for grand larceny. This concession, regarding the Commonwealth’s proof of the offense of grand larceny, has the virtue of being literally true in the abstract — the Commonwealth had, in fact, presented sufficient evidence that, if believed by a factfinder, satisfied all *665 of the elements required for a grand larceny conviction. Of course, the technical accuracy of Dufresne’s argument cannot convey any authority to the trial court to render a verdict on that offense if it is not included in the indictment, but drawing that distinction was entirely the responsibility of the trial court.
In short, I read the statement of counsel for Dufresne, relied upon by the majority as constituting an invitation to the trial court to commit error, the same way the trial court apparently did — as nothing more than repeating her earlier argument that the Commonwealth’s evidence was insufficient to prove the element of force, threat or intimidation sufficient for robbery while agreeing with the proposition initially raised by the trial court that the evidence of the Commonwealth, if found to be credible, did establish the elements of an unlawful taking of personal property of sufficient value to constitute grand larceny, and thus, the Commonwealth’s evidence taken in the light most favorable to it, proved no more than the crime of grand larceny. If, as also seems apparent from this record, at the time she moved to strike the evidence Dufresne’s counsel was under the mistaken belief that grand larceny was a lesser-included offense of robbery, Dufresne made a clear and unequivocal attempt to correct her legal argument at a point in time when the trial court retained jurisdiction to correct any error and when no prejudice would have been suffered by the Commonwealth.
Counsel for Dufresne’s statement that “I’d ask for the charge to be dropped down to grand larceny” was not a change in her not guilty plea or her basic legal position that the Commonwealth had presented insufficient evidence to legally support a conviction for robbery. Her argument, taken in context with the nature of the motion and her other statements to the trial court, was clearly a concession that the Commonwealth’s evidence, if believed by the trial court as the factfinder, was sufficient to satisfy the elements of the crime of grand larceny, but not sufficient to support a prima facie case of robbery. In the absence of any evidence of bad faith, Dufresne’s counsel’s attempt to be candid with the trial court *666 during argument regarding the state of the evidence, though mistaken, ought to he encouraged rather than punished, as should her attempt to later correct the mistake when it was discovered.
If arguing, however inartfully, in the context of a motion to strike the evidence that the Commonwealth’s evidence failed to prove no more than a lesser-included or even an uncharged offense equates to a binding invitation to convict of the lesser or uncharged offense, then today’s decision effectively converts many if not most motions to strike the evidence into the functional equivalent of guilty pleas to those lesser or uncharged offenses — without the constitutional safeguards of a colloquy that insures that the defendant knows and understands the consequences of the de facto guilty plea her attorney’s argument is binding her to.
In its application of the invited error doctrine, the majority relies entirely upon our Supreme Court’s holding in Sullivan v. Commonwealth, 157 Va. 867, 161 S.E. 297 (1931). Citing only Sullivan, the majority holds that the invited error doctrine applies to any assertion of, or acquiescence in, a proposed legal position while the case is in the trial court no matter the circumstances. However, their reliance is misplaced because the rationale for the holding in Sullivan is easily distinguished from the facts of this case.
Sullivan was indicted for “breaking and entering with the intent to maim, disfigure, and kill,” but the indictment was amended with Sullivan’s acquiescence to breaking and entering “with intent to commit murder, rape or robbery.” Id. at 875, 161 S.E. at 299. After the trial court instructed the jury, Sullivan objected to the jury instruction because the instruction given by the trial court was “predicated upon section 4438 of the Code, while the indictment is drawn under section 4439 of the Code, and that the indictment in this case is fatally defective as an indictment under section 4438 of the Code.” Id. at 873, 161 S.E. at 298-99. After the jury returned a verdict of guilty, Sullivan “moved the [trial] court to set aside the verdict and grant him a new trial upon the ground that the same was contrary to the law and the evidence, and a misdirection of the *667 jury.” Id. at 874, 161 S.E. at 299. The trial court overruled Sullivan’s motion and entered judgment against him. Id.
Our Supreme Court noted:
The accused acquiesced in the prosecution for a breaking and entering with intent to commit murder, rape or robbery. That was the charge which he defended and about which he testified. After the evidence had been concluded he should not have been 'permitted to claim that he could not be prosecuted under section 4438. By this acquiescence he waived the right to make that contention because it was inconsistent with his own motion to require the prosecutor to elect under which section he should be tried. The motion, by necessary implication, conceded the right to try the accused under either section. Though the procedure was so irregular, the accused cannot be allowed to take advantage of an irregularity for which he is directly responsible. He cannot approbate and reprobate — invite error and then take advantage of his own wrong.
Id. at 878, 161 S.E. at 300 (emphasis added).
None of the circumstances that form the basis for the holding in Sullivan obtain here. In fact, the only similarity this case has with the facts in Sullivan is that the charging document, both in Sullivan and here, framed the nature of the proceedings and could be modified only by the prosecutor, with the agreement of the trial court.[16] However, in Sullivan, the indictment was amended with the acquiescence of Sullivan to be tried for breaking and entering with intent to commit murder, rape or robbery, pursuant to the Code of Virginia in use at the time. The agreed upon amendment was relied upon *668 by both the Commonwealth and the trial court, and, once amended, the amended indictment became the offense that framed a guilty or not guilty determination. Here, unlike in Sullivan, the Commonwealth never sought to amend its indictment against Dufresne from robbery, in violation of Code § 18.2-58, to grand larceny, in violation of Code § 18.2-95. Thus, there could be no acquiescence on the part of Dufresne to a legal position adopted by the Commonwealth. Even reversing the roles from Sullivan as the majority does here, the comparison with Sullivan fails because even if Dufresne’s request “that the charge be dropped down to grand larceny” constituted a request that the charge be amended, the Commonwealth never acquiesced in such a request. Moreover, contrary to the case in Sullivan, Dufresne’s mistaken and later abandoned argument to the trial court that the evidence presented by the Commonwealth proved no more than grand larceny as a matter of law, could not be considered an agreement to alter the offense charged and be bound thereby, thus also altering the nature of the burden of proof placed upon the Commonwealth, when the record is clear that the Commonwealth vigorously opposed the request. Without such an amendment, consistent with our Supreme Court’s holding in Commonwealth v. Dalton, 259 Va. 249, 524 S.E.2d 860 (2000), a trial court is without any authority to render a verdict on an uncharged offense unless it is a lesser-included offense of one that is charged. Furthermore, and contrary to the position taken by the majority, such authority cannot be conveyed simply by concession or acquiescence.[17] See Dalton, 259 Va. at 253, 524 S.E.2d at 862.
Additionally, Sullivan waited until his case had gone to the jury before objecting to the instruction he complained of on *669 appeal. Thus, in Sullivan, the trial court could not correct the error without declaring a mistrial. To do so would clearly have resulted in prejudice to the Commonwealth which relied upon Sullivan’s acquiescence to the amendment of the indictment. Conversely, this case was a bench trial, and prior to sentencing, while the trial court continued to exercise jurisdiction over the case, Dufresne abandoned her erroneous legal argument and filed a motion to set aside the verdict arguing that grand larceny was not a proper offense for which she could be convicted because it is not a lesser-included offense of robbery.[18] According to the majority, once taken, Dufresne’s mistaken argument was irrevocable and irreversible. Thus, the majority concludes that her attempt to correct the error through her motion to set aside the verdict came too late to avoid the application of the invited error doctrine.
In my view, the analysis and holding of the majority on this point brings to fruition in the Commonwealth Chief Justice Burger’s concern that the invited error doctrine “has evolved in a way not contemplated” and will “exacerbate the tensions inherent in the adversary process.” United States v. Young, 470 U.S. 1, 12, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1 (1985).

A REQUIREMENT OF PREJUDICE IN THE INVITED ERROR DOCTRINE

Even assuming Dufresne’s argument regarding the sufficiency of the Commonwealth’s case somehow constituted an *670 invitation to the trial court to commit error, the trial court was the factfinder and Dufresne clearly abandoned her earlier erroneous arguments while the trial court still retained jurisdiction to alter its verdict and importantly, those earlier erroneous arguments were abandoned at a point in time when no prejudice to the Commonwealth had resulted from any erroneous arguments regarding the law.
The majority concedes that every case decided in the Commonwealth involving the invited error doctrine, including Sullivan, includes as a factor in the analysis, reliance by the opposing party upon the erroneous legal position adopted by the appellant and prejudice to the opposing party that would result from permitting an alteration in that legal position. Despite that concession, in an example of circular reasoning, the majority concludes that because none of these cases expressly requires a finding of prejudice, no such requirement exists and holds accordingly. In stretching to reach this conclusion, the majority ignores some basic legal principles.
First, prejudice to the opposing party is a required statutory consideration anytime there is a variance between the evidence presented and the allegations made and an amendment to the pleadings is sought. Code § 8.01-377.
Second, 73 years after its decision in Sullivan, our Supreme Court held that “a person who has taken an erroneous position on a question of law is ordinarily not estopped from later taking the correct position, provided his adversary has suffered no harm or prejudice by reason of the change.” Lofton Ridge, LLC v. Norfolk S. Ry., 268 Va. 377, 382, 601 S.E.2d 648, 651 (2004).[19]
*671 Finally, despite holding that no showing of reliance or prejudice is required to prohibit correction of any discovered error, the majority nevertheless speculates prejudice into existence by concluding that “the Commonwealth was prejudiced when the trial court refused to decide between petit larceny and robbery by accepting Dufresne’s invitation to convict her of grand larceny.”
In other words, the majority oddly concludes that the Commonwealth was apparently prejudiced by its own election to “put all of its eggs in one basket” by insisting upon a verdict on the indictment it brought and by receiving a verdict of guilty to an offense greater than the offense that its evidence would permit any court to legitimately render. Yet, contrary to the assertion of the majority that “[t]he Commonwealth was denied something it was entitled to receive— having the trial court decide whether Dufresne was guilty of robbery or petit larceny,” the Commonwealth was clearly not deprived of the opportunity to have the trial court, as the factfinder, consider both robbery and petit larceny as possible verdicts. Rather, robbery, grand larceny, and petit larceny were all clearly discussed and considered by the trial court as *672 possible verdicts.[20] The trial court simply settled upon a verdict that the evidence supported in the abstract but that the law did not permit it to render because that particular offense was uncharged. Pointedly, if the Commonwealth had in fact believed that Dufresne’s argument during her motion to strike deprived it of an opportunity to see its “all or nothing strategy ... through to conclusion” as the majority asserts, the prosecutor certainly failed to say so during the hearing on the motion to set aside the verdict when the trial court still retained the option of changing its verdict in any way permitted by the law and the evidence, thus remedying any such prejudice.
Furthermore, this discovery by the majority of imaginary prejudice to, but never asserted by, the Commonwealth ignores the presumption of correctness we must accord the trial court. The trial court “is presumed to know the law and apply it correctly in each case.” Groves v. Commonwealth, 50 Va.App. 57, 62, 646 S.E.2d 28, 30 (2007). Applying that presumption here, the obvious explanation supported by this record for the trial court’s statement to Dufresne that “[y]our lawyer did a fine job by getting me ... to get you out from under the robbery conviction” is simply that the trial court did not agree *673 with the Commonwealth that the element of force, threat or intimidation required for a robbery conviction was proven beyond a reasonable doubt.
Moreover, the majority does not limit its advisory dicta to speculation concerning potential prejudice resulting from the Commonwealth’s own charging decision, the majority also steps outside this Court’s proper appellate role by suggesting that the trial court should have found the evidence sufficient to convict Dufresne of robbery. However, “[a]s an appellate court, ‘[w]e may not substitute our judgment for that of the trier of fact, nor may we reweigh the evidence, because we have no authority to preside de novo over a second trial.’ ” Jones v. Commonwealth, 65 Va.App. 274, 279, 777 S.E.2d 229, 231 (2015) (quoting Ervin v. Commonwealth, 57 Va.App. 495, 503, 704 S.E.2d 135, 138-39 (2011)). In substituting its judgment for that of the factfinder by offering this improper advisory opinion, the majority not only ignores the presumption of correctness but also elects to offer advisory jurisprudence on an issue neither briefed nor before us — whether the evidence was sufficient to support a conviction for a crime a defendant was acquitted of.
Failure of proof on the Commonwealth’s part hardly equates to prejudice caused by Dufresne’s erroneous argument especially when the Commonwealth not only did not rely on her argument but expressly rejected it. In addition, the record clearly reflects that the trial court also expressly rejected any “invitation” to commit error by denying both motions to strike and later made a clear and unequivocal statement when it rejected Dufresne’s attempt to correct the error by stating, “I have found her guilty of grand larceny, whether you consider that a lesser-included or not. That is my decision.”
By definition, a trial court abuses its discretion when it makes an error of law. Porter v. Commonwealth, 276 Va. 203, 260, 661 S.E.2d 415, 445 (2008). “Rule 5A:18 promotes the correction of error at the trial level.” Copeland v. Commonwealth, 42 Va.App. 424, 441, 592 S.E.2d 391, 399 (2004). “The *674 contemporaneous objection rule, embodied in Rule 5A:18 ... is based on the principle that a litigant has the responsibility to afford [the trial] court the opportunity to consider and correct a perceived error before such error is brought to the appellate court for review.” Williams v. Gloucester Sheriff’s Dep’t, 266 Va. 409, 411, 587 S.E.2d 546, 548 (2003) (citation omitted). Moreover,
[f]or an objection to meet the requirements of Rule 5A:18, it must also “be made ... at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error.” This requirement allows the circuit court to remedy the error while also giving “the opposing party the opportunity to meet the objection at that stage of the proceeding.”
Maxwell v. Commonwealth, 287 Va. 258, 265, 754 S.E.2d 516, 519 (2014) (quoting Scialdone v. Commonwealth, 279 Va. 422, 437, 689 S.E.2d 716, 724 (2010)).
To be human is to be fallible. Recognizing that fallibility and furthering the goal of a fair, if imperfect trial, I conclude that the invited error doctrine should not be given the broad and draconian application adopted today by the majority to a mistaken and erroneous legal argument that was abandoned prior to any reliance thereon by, or prejudice to, the Commonwealth.
In the case at bar, Dufresne made her motion to set aside the verdict in order to give the trial court the opportunity to correct its error. In fact, during the hearing on her motion to set aside the verdict, Dufresne informed the trial court that “we are still in trial court [sic], [and a] [m]otion to set aside the verdict is to fix errors. An error was made.”[21] The correc *675 tion requested would have occurred without any prejudice to the Commonwealth since it never accepted or relied upon the earlier legal argument advanced by Dufresne. The motion to set aside the verdict put the trial court on notice that it had abused its discretion as a matter of law and offered a timely procedure to cure the problem.
Because this was a bench trial with the trial court acting as the factfinder, I would hold that Dufresne’s motion to set aside the verdict was timely, even though it was made prior to sentencing and almost two months after the trial, because it still afforded the trial court an opportunity to consider and correct a perceived error in the verdict without prejudice. Dufresne’s motion to set aside the verdict made it clear that she objected to being convicted of grand larceny, despite her earlier position that the Commonwealth’s evidence suggested her guilt for that offense. Thus, prior to its final judgment, the trial court had the opportunity — in the light of Dufresne’s correction regarding her understanding of the applicable law — to reconsider and change its verdict to either robbery or petit larceny, correcting its error, if it was so inclined.
Therefore, I would hold that as a matter of law, the trial court abused its discretion in failing to set aside the verdict and in convicting Dufresne of grand larceny because she had not been charged with that offense nor was it a lesser-included offense of the crime charged, robbery. In my view, the analysis and judgment of the majority will result in a zero tolerance policy. As a result, an attorney who argues infirmities in his opponent’s case based upon a mistaken understanding of the law or who suggests or acquiesces in an erroneous legal position during trial, would immediately and irrevocably bind their client to the erroneous position despite any opportunity to abandon or correct it without prejudice by bringing it to the trial court’s attention while corrective action can still be taken. This will occur even when, as here, the trial court lacks the legal authority to adopt the erroneous argument and when *676 such argument is neither relevant to the ultimate issue nor relied upon by other parties or the trial court. Such a policy does not comport with the principle that a trial need only be fair, not flawless.
In responding to these concerns, the majority proposes a radical alternative approach that it insists will avoid this scenario:
The trial court, having been informed of the error, must then determine if, under the circumstances, it is appropriate to relieve the litigant of the consequences of the invited error. Whether granting such relief is appropriate necessarily will depend on the facts and circumstances of each case. Issues of potential prejudice, whether the trial court believes the error was invited intentionally, when in the proceeding, the error is brought to the trial court’s attention, the amount of time that has passed between the invitation to commit error and the withdrawal of the invitation, the degree to which subsequent proceedings in the trial court were infected by the error, and other factors may properly influence the trial court’s decision of whether or not to relieve a party of the consequences of his or her invitation to commit error. In turn, we would review that decision of the trial court for an abuse of discretion.
In effect, the majority proposes that the new standard of appellate review in these cases be whether or not a trial court abused its discretion when it refused to recognize that it already abused its discretion in committing legal error. Curiously, the majority proposes this novel double abuse of discretion standard in the form of advisory dicta since it has already concluded that no showing of prejudice is ever required. Yet, the majority does not apply its advisory formula to the facts of this case. It is certainly the case that the trial court did not and the majority does not remand for the purpose of having the trial court do so.

CONCLUSION

For the foregoing reasons, I would hold that Dufresne was not procedurally barred by the invited error doctrine from *677 raising the trial court’s error in convicting her of grand larceny on appeal. Accordingly, I would reverse Dufresne’s conviction of grand larceny and remand this case to the trial court for a new trial, if the Commonwealth be so advised.[22]

. The Commonwealth also argues that Dufresne’s assignment of error is barred because a party may not approbate and reprobate. Although there is occasional overlap in their application and the terms are often inartfully used interchangeably by both this Court and our Supreme Court, the approbate-reprobate bar and the invited error doctrine are analytically different in both their definition and application. See e.g. Matthews v. Matthews, 277 Va. 522, 675 S.E.2d 157 (2009); see also Alford v. Commonwealth, 56 Va.App. 706, 696 S.E.2d 266 (2010). The approbate-reprobate bar requires that where a party affirmatively assumes inconsistent legal positions on their own behalf, the opposing party and the courts are entitled to rely on the position first taken and the approbating party will be bound thereby. Unless amended, a litigant’s pleadings are binding upon him. His opponent is entitled to rely upon the position he takes, and should be able to prepare for trial with the assurance that this position will not be suddenly changed without notice. For this reason, a litigant will not be permitted to assume, successively, inconsistent and mutually contradictory positions. Berry v. Klinger, 225 Va. 201, 207, 300 S.E.2d 792, 795 (1983) (citing Winslow v. Scaife, 224 Va. 647, 299 S.E.2d 354 (1983)).
The invited error doctrine is somewhat different and holds that an appellate court will consider as waived for the purposes of an appeal, those errors of law that are induced, encouraged, acquiesced in, consented to or otherwise permit a party to “take advantage of the situation created by his own wrong.” Cangiano v. LSH Bldg. Co., 271 Va. 171, 181, 623 S.E.2d 889, 895 (2006) (emphasis added). In this case, the majority, the Commonwealth, and several of the cases cited also conflate the two concepts. Because Dufresne has not assumed inconsistent legal positions on her own behalf, in my view, this case implicates only the invited error doctrine.

. The majority insists that Dufresne's argument was not a concession but rather the adoption of the irrevocable legal position that she was guilty of grand larceny. For the reasons detailed more fully below, I fail to see how Dufresne's argument could be considered as anything but a concession regarding the sufficiency of the Commonwealth’s evidence.

. "An indictment is a written accusation of crime, prepared by the attorney for the Commonwealth and returned 'a true bill' upon the oath or affirmation of a legally impaneled grand jury.” Code § 19.2-216.
If there be any defect in form in any indictment ..., or if there shall appear to be any variance between the allegations therein and the evidence offered in proof thereof, the court may permit amendment of such indictment ... at any time before the jury returns a verdict or the court finds the accused guilty or not guilty, provided the amendment does not change the nature or character of the offense charged.
Code § 19.2-231.

. Since the trial court had subject matter and personal jurisdiction in this case, its judgment convicting Dufresne for an offense it lacked the legal authority to consider was not void ab initio but merely voidable and Dufresne properly sought to void it while the trial court still had the opportunity to do so. See Singh v. Mooney, 261 Va. 48, 51-52, 541 S.E.2d 549, 551 (2001) (“An order is void ab initio if entered by a court in the absence of jurisdiction of the subject matter or over the parties, if the character of the order is such that the court had no power to render *669 it, or if the mode of procedure used by the court was one that the court could 'not lawfully adopt. ...' In contrast, an order is merely voidable if it contains reversible error made by the trial court. Such orders may be set aside by motion filed in compliance with Rule 1:1 or provisions relating to the review of final orders.” (internal citations omitted)). In this case, Dufresne's motion to set aside the verdict was a proper mechanism to attempt to void the erroneous judgment of the trial court.

. Pursuant to Rule 1:1, "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer.” The Commonwealth does not dispute that Dufresne’s motion to set aside the verdict was timely filed.

. The majority asserts that my reliance on this longstanding legal principle is misplaced because it relates to the doctrine of estoppel instead of invited error. However, the doctrine of estoppel is the very foundation of the invited error doctrine. Over 100 years ago, our Supreme Court stated that a party is "estopped” because "[a] party who invites error will not be heard to complain of having misled the court.” Phillip Levy & Co. v. Davis, 115 Va. 814, 820, 80 S.E. 791, 793 (1914) (emphasis added). Moreover, as earlier noted, the concepts of the approbate-reprobate doctrine and the invited error doctrine have *671 been conflated by different courts. Even so, in the Commonwealth there is a long-standing general rule that "[a] litigant is estopped from taking a position which is inconsistent with one previously assumed, either in the course of litigation for the same cause of action, or in dealings in pais.” Burch v. Grace St. Bldg. Corp., 168 Va. 329, 340, 191 S.E. 672, 677 (1937) (emphasis added) (citing Chesapeake & Ohio Railway Company v. Rison, 99 Va. 18, 37 S.E. 320 (1900); Canada v. C. H. Beasley & Brothers, 132 Va. 166, 111 S.E. 251 (1922); Arwood v. Hill’s Adm’r, 135 Va. 235, 117 S.E. 603 (1923); Alexander v. Commonwealth, 137 Va. 477, 120 S.E. 296 (1923); Fitchett v. Parsons, 142 Va. 163, 128 S.E. 457 (1925); Title, etc., Bank v. Clifton Forge National Bank, 149 Va. 168, 140 S.E. 272 (1927); Nagle v. Syer, 150 Va. 508, 143 S.E. 690 (1928); Byrd v. Pennsylvania Railroad Company, 151 Va. 954, 961, 145 S.E. 722, 724 (1928)).
Upon that rule election is founded; a man shall not be allowed in the language of the Scotch law “to approbate and reprobate” and where a man has an election between several inconsistent courses of action, he will be confined to that which he first adopts; the election if made with knowledge of the facts is in itself binding.
Burch, 168 Va. at 340, 191 S.E. at 677.

. In addition to Dufresne’s motion to set aside the verdict where the trial court considered but rejected petit larceny as a possible verdict, when Dufresne began her motion to strike the Commonwealth’s evidence, the trial court asked: "Is it grand larceny, grand larceny from the person, or is it robbery? Is that what you’re trying to get at?” Defense counsel responded, ”[t]he argument would be larceny.” Defense counsel continued arguing that the only issue in this case is whether the evidence supplied proof of the element required for robbery that the taking of the victim’s properly was accomplished by force, threat, or intimidation. After Dufresne argued her motion, the following colloquy occurred:
Trial Court: What are you telling me she’s guilty of?
Defense Counsel: Larceny.
Trial Court: Grand larceny?
Defense Counsel: They prove value with the cash. So yes. I would say they have met the burden for grand larceny.
If the Commonwealth shared the majority's concern that it was prejudiced by a failure to have the trial court consider petit larceny as a verdict, it could have said so and joined Dufresne’s motion to that effect.

. The majority is correct that Dufresne misspoke during the motion to set aside the verdict hearing. Dufresne told the trial court that "[if] the [trial c]ourt will recall, we never made a request to have her found guilty of grand larceny. We just kept using the term larceny. ... We always just used the term larceny, which could be petit or grand.” This was not an entirely accurate recollection of what was requested during the trial. Although the assertion is accurate as to her initial motion to strike the evidence, Dufresne specifically asked the trial court "for the *675 charge to be dropped down to grand larceny” in her renewed motion to strike.

. Despite the result my analysis of the law compels me to reach today, I note that in light of the Supreme Court's recent decision in Commonwealth v. Bass, 292 Va. 19, 786 S.E.2d 165 (2016), double jeopardy will not preclude the Commonwealth from retrying Dufresne for grand larceny or grand larceny from the person, pursuant to Code § 18.2-95 if it elects to formally charge her with either offense. Because “[i]t is a venerable principle of double jeopardy jurisprudence that the successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge[,]” the Commonwealth cannot retry Dufresne for robbery, in violation of Code § 18.2-58, as that would be the same charge. Id. at 32, 786 S.E.2d at 172. Since a charge of grand larceny is not the same charge, double jeopardy principles would not bar retrial on a charge of grand larceny.